UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: 11-10018-CR-MARTINEZ-MCALILEY

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

FRANCISCO MAUNTECA-LOPEZ,

    Defendants.
_____/

## ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

THE MATTER was referred to the Honorable Lurana S. Snow, United States Magistrate Judge for a Report and Recommendation on Defendant's Motion to Suppress (D.E. No. 28). Defendant seeks to suppress statements made without *Miranda* warnings during the United States Coast Guard (USCG) boarding of a vessel he was operating, and to suppress evidence seized from the vessel. The Government responded to Defendant's Motion to Suppress. (D.E. No. 38). An evidentiary hearing was held January 3, 2012. The Magistrate Judge filed a Report and Recommendation (D.E. No. 54) on January 6, 2012, recommending that the Motion to Suppress (D.E. No. 28) be denied.

### I.     Evidentiary Hearing

At the evidentiary hearing, USCG Officer Roberto Narvaez and USCG Petty Officer Dennis Ordyna, testified regarding boarding the vessel. Officer Narvaez testified that a USCG boarding team was assembled to intercept Defendant's vessel as it had been observed entering Cuban seas and moving erratically. (D.E. No. 54 at 2). He observed the vessel's Florida

registration numbers prior to boarding. (*Id.* at 6). Once on board, Officer Narvaez asked the two men, including Defendant, their last port of call, next port of call and the purpose of their trip. (*Id.* at 3). Officer Narvaez further testified that he noticed in plain view a large number of fuel vessels and that based on the total quantity of fuel, the vessel was a "floating bomb." (*Id.* at 4). The two officers informed Defendant that they were staying on the vessel because of the fuel hazard. (*Id.* at 5). Officer Narvaez stated that "he never intended to arrest the defendant for entering Cuban waters. The defendant was neither placed under arrest nor told he was under arrest, and was not restrained in any way. He was able to move about the vessel and had access to food and water. . . . [He] eventually learned that Customs and Border Protection (CBP) was interested in the defendant's vessel, but he did not believe that the defendant was going to be arrested." (*Id.* at 4). When Defendant asked Officer Narvaez when he could continue his voyage, Officer Narvaez responded "that he could do so as soon as the fuel was removed." (*Id.* at 6).

Officer Ordyna's testimony was similar to that of Officer Narvaez's, including that he did not learn anything about CBP's interest in the vessel until the very end of the boarding process. (*Id.* at 8). He also testified that Defendant was "never placed under arrest or told he would be arrested. He was not handcuffed and was free to walk around the boat and to get food and drinks from the coolers." (*Id.* at 8).

Defendant conceded at the evidentiary hearing that the Coast Guard had authority to board the vessel to conduct a document and safety inspection pursuant to 14 U.S.C. § 89a. (*Id.* at 10). However, Defendant believes that questioning by the officers constituted a custodial interrogation and that *Miranda* warnings should have been administered, particularly before

asking about fishing equipment and where the defendant had been during the trip. (*Id.* at 10). Defendant believes these statements should be suppressed, along with physical evidence not discovered during the course of the routine safety and document check.

Magistrate Judge Snow found that the items seized were pursuant to a search by CPB after the vessel had been seized for possible forfeiture. Further, Magistrate Judge Snow determined in the Report and Recommendation that since the USCG was permitted to board the vessel, the items could be seized under the plain view doctrine. (*Id.* at 11). Magistrate Judge Snow further found that any statements made were made during the scope of a routine inspection for documentation and safety. (*Id.* at 14).

## II.     Objections to Report and Recommendation

The Court has reviewed the entire file and record. The Court has made a *de novo* review of the issues that the objections to the Magistrate Judge's Report and Recommendation present. The Court finds the objections assert matters already thoroughly addressed in Magistrate Judge Snow's well-reasoned Report and Recommendation.

Specifically, Defendant objects to the conclusion that he was not "in custody" for purposes of *Miranda*. (D.E. No. 65 at 2). Defendant states that the Report and Recommendation acknowledges that law enforcement advised Defendant that he was not free to leave the vessel and that *Miranda* warnings were never administered prior to questioning by the USCG. *Id.* Defendant bases this on that portion of the Report and Recommendation which states that "Officer Ordyna stated that after the safety inspection was completed, they were in a holding pattern, waiting to hear whether any action would be taken as the result of the defendant's entry into Cuban waters. During that time, the defendant was not free to leave." (*Id.* at 2 (citing D.E.

3

No. 54 at 9)).

The Report and Recommendation goes on to address that *Miranda* warnings are not required when there is an "initially routine boarding and safety inspection" that has not "metamorphosed into a custodial interrogation at the time of questioning." (D.E. No. 54 at 13). It specifically states that "[t]he Eleventh Circuit 'has long recognized that the Coast Guard's routine stop, boarding and inspection of an American vessel on the high seas does not normally rise to the level of custodial detention thus requiring *Miranda* warnings.' *United States v. Rioseco*, 845 F.2d 299, 302-03 (11th Cir. 1988) (citing *United States v. Jonas*, 639 F.2d 200, 204 (5th Cir. Unit B 1981); *United States v. Gray*, 659 F.2d 1296 (5th Cir. Unit B 1981))." (*Id.* at 12). The Report and Recommendation analyzes the four factors set forth in *United States v. Magdaniel-Mora*, 746 F.2d 715, 723 (11th Cir. 1984), which are to be considered when determining if a custodial interrogation was created. (D.E. No. 54 at 13). Magistrate Judge Snow looked at:

> (1) whether probable cause to arrest the defendant had arisen; (2) whether the interrogating officer subjectively intended a detention beyond that needed for a routine stop and search; (3) whether the defendant subjectively believed that his freedom was restricted so beyond the customary that he was imminently subject to arrest; and (4) whether the investigation had become accusatory and focused on the defendant.

*Magdaniel-Mora*, 746 F.2d at 723. After considering the above four factors, Magistrate Judge Snow found that Defendant was not in custody at any time during the boarding process. (*Id.* at 13). Specifically, the Report and Recommendation states that

> [a]lthough the Coast Guard Officers suspected that the defendant was involved in an alien smuggling venture, there was no probable cause to arrest him and neither of the boarding officers subjectively

4

> intended a detention beyond that needed for a routine stop and search. The defendant did not subjectively believe that his freedom was so restricted so beyond the customary that he was imminently subject to arrest, since he asked Officer Narvaez when he would be permitted to continue with his trip, and was told he could do so when the dangerous fuel had been removed. Finally, the investigation had not become accusatory and focused on the defendant, since the officers merely gave the defendant a warning for entering foreign waters.

(*Id.* at 13). This Court agrees with the analysis in the Report and Recommendation that a custodial interrogation did not result from the initial boarding and safety inspection.

Defendant further objects to the finding that he was not "in custody" because the Report and Recommendation "seems to make this conclusion based on the testimony of Officer Ordyna who stated that they were waiting for a form 6310, and until that form was received the entire boarding process would not be completed." (D.E. No. 65 at 2). However, the Report and Recommendation bases its finding that Defendant was not in custody on a weighing of the four *Magdaniel-Mora* factors listed above. Officer Ordyna testified regarding the form 6310 by stating

> that after the safety inspection was completed, they were in a holding pattern, waiting to hear whether any action would be taken as the result of the defendant's entry into Cuban waters. During that time, the defendant was not free to leave. Eventually Officer Ordyna learned that the defendant was to be cited. A form 6310 was completed which was read to the defendant and was asked to sign it. The officer did not know what the defendant was required to do as a result of the citation or whether he was required to appear in court.

(D.E. No. 54 at 9-10). Contrary to Defendant's objections, the Report and Recommendation adequately sets forth its findings that Defendant was not in custody based on the *Magdaniel-Mora* factors weighed above. As such, "no action was taken and no question was posed by either

5

of the boarding officers that was outside the scope of a routine inspection for documentation and safety" and, therefore, Defendant "was not 'in custody' at any time during the boarding process and *Miranda* warnings were not required prior to any of the questions posed by the Coast Guard Officers." (*Id.* at 14).

Defendant also objects on the basis that "the five plus hours of continued detention of Mr. Manuteca-Lopez was part of the 'routine safety/document check' inspection." (D.E. No. 65 at 3). Defendant states that reliance on *United States v. Rioseco*, 845 F.2d 299 (11th Cir. 1988) is misplaced because Officer Ordyna was following instructions of his superiors. Defendant contends that unlike *Rioseco*, all decisions and communications regarding detention were made by officers other than Officer Ordyna and, thus, *Rioseco* is inapplicable. (D.E. No. 65 at 3). However, as set forth in the Report and Recommendation, in order to determine that a suspect is in custody, "it must be evident that, under the totality of the circumstances, a reasonable man in the suspect's position would feel a restraint on his freedom of movement fairly characterized as that 'degree associated with a formal arrest' to such extent that he would not feel free to leave." *United States v. Phillips*, 812 F. 2d 1355, 1360 (11th Cir. 1987)" (citations omitted). The Eleventh Circuit in *Rioseco* stated that

> Rioseco was not in custody during the initial boarding and questioning. Appellant-defendant was not told that he was in custody or under arrest. The mere fact that Coast Guard officers were armed and that Jesuchristo personnel were gathered in one specific area of the boat during the routine search of the boat subsequent to boarding could not lead a reasonable man to believe that he was in custody. The Coast Guard action was simply routine procedure in a usual boarding action.

*Rioseco*, 845 F.2d at 303. The Court agrees with Magistrate Judge Snow's conclusion that

6

*Rioseco* is properly applied to the facts here and that the boarding and the detention did not rise to the level of a custodial detention.

Defendant further objects to the conclusion that there were no "special circumstances" regarding the routine safety and document check. (D.E. No. 65 at 4). He states that the communications between Officer Ordyna, his commanding officer and CBP demonstrate that the "initial detention for a routine safety and document inspection escalated to a full blown criminal investigation . . . ." (D.E. No. 65 at 4). As discussed above, this Court agrees with Magistrate Judge Snows' weighing of the *Magdaniel-Mora* factors and conclusion that Defendant was not "in custody."

Finally, Defendant objects to the conclusion that the routine safety inspection was not "metamorphosed into a custodial interrogation." (D.E. No. 65 at 4). Defendant asserts that Officer Ordyna's questioning and the timing of those questions had no bearing on the issue of safety or document check and that the officers' testimony that they believed Defendant was involved in alien smuggling transforms this into a custodial interrogation. *Id.* Defendant takes issue that the Report and Recommendation does not set forth the chronology of the questioning process. However, as the officers' testimony makes clear, they had no intention to arrest Defendant. *See* (D.E. No. 54 at 4, 8). Further, the Report and Recommendation sets forth Officer Narvaez's testimony which specifies that he first asked Defendant about his last port of call, then asked about the next port of call, and proceeded to ask about the purpose of the trip. (*Id.* at 3). Defendant explained that the purpose of the trip was for fishing. (*Id.* at 3). When asked when they left Key West, Defendant responded it was about two days prior. (*Id.* at 3). Defendant then stated he came from "back there" meaning Cuba. (*Id.* at 3). Defendant also

7

stated that he had a prior arrest for smuggling aliens. (*Id.* at 3). As such, the Report and Recommendation does set forth in some detail the chronology of the officers' questioning of Defendant. Also, as discussed above, this Court agrees with Magistrate Judge Snows' weighing of the *Magdaniel-Mora* factors and conclusion that Defendant was not "in custody." Accordingly, it is

**ADJUDGED** that United States Magistrate Judge Snow's Report and Recommendation (D.E. No. 54) is **AFFIRMED** and **ADOPTED**. Accordingly, it is

**ADJUDGED** that

Defendant's Motion to Suppress (D.E. No. 28) is **DENIED**.

DONE AND ORDERED in Chambers at Miami, Florida, this ___9___ day of January, 2012.

JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Snow
All Counsel of Record